# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States Of America | |
| v. | **ELECTRONIC CRIMINAL COMPLAINT** |
| 1. SHAWNAVON CURLEY, | |
| 2. ARMONDO FRANCISCO WHITEROCK, | **Case Number:** 19-4271mJ - PCT-CDB |
| Defendants. | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about September 13, 2019, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendants, SHAWNAVON CURLEY and ARMONDO FRANCISCO WHITEROCK, both Indians, did with malice aforethought, and in the perpetration and attempted perpetration of a felony, that is, robbery and burglary, unlawfully kill M.W.

In violation of Title 18, United States Code, Sections 1153 and 1111.

## COUNT 2

On or about September 13, 2019, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendants, SHAWNAVON CURLEY and ARMONDO WHITEROCK, both Indians, did with malice aforethought unlawfully kill M.W.

In violation of Title 18, United States Code, Sections 1153 and 1111.

## COUNT 3

On or about September 13, 2019, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendants, SHAWNAVON CURLEY and ARMONDO WHITEROCK, both Indians, did knowingly and intentionally assault M.W. with a dangerous weapon, that is, a bat, with the intent to do bodily harm.

In violation of Title 18, United States Code, Sections 1153 and 113(a)(3).

## COUNT 4

On or about September 13, 2019, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendants, SHAWNAVON CURLEY and ARMONDO WHITEROCK, both Indians, did by force, violence, and intimidation take and attempt to take something of value, that is, a vehicle, a firearm, a pellet gun, a bat, and a knife, from the person and presence of P.W.

In violation of Title 18, United States Code, Sections 1153 and 2111.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof:      ☒Yes      ☐ No

AUTHORIZED BY: _AUSA Jillian Besancon_

Scott Sandusky, Special Agent, FBI
Name of Complainant

Signature of Complainant

Sworn to before me and subscribed telephonically

9/23/2019 at 1:15 pm
Date/Time

at      Flagstaff, Arizona
City and State

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
Name & Title of Judicial Officer

_Camille D Bibles_
Signature of Judicial Officer

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

**ELECTRONIC AFFIDAVIT**

I, **Scott Sandusky**, being duly sworn, hereby depose and state the following:

1.     Your Affiant is a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and is currently assigned to the Gallup, New Mexico, Resident Agency of the Phoenix, Arizona, FBI Field Division. In the course of his official duties, your affiant is charged with the investigation of crimes occurring on the Navajo Indian Reservation within the Federal District of Arizona. In this regard, the following information was developed by your affiant and other agents of the FBI and/or criminal investigators of the Navajo Department of Criminal Investigations (NDCI), in connection with the joint FBI/NDCI investigation into the murder and assault of M.W. and the robbery and burglary at the residence shared by M.W. and his family members.

2.     The statements contained in this Affidavit are based in part on information provided to your Affiant, by Navajo Nation Criminal Investigator (CI) Jefferson Joe, and other law enforcement officers, either directly or indirectly through their reports or affidavits, surveillance conducted by law enforcement officers, and information provided by witnesses. Your Affiant also relies on his experience, training, and background as a Special Agent with the FBI in evaluating

1

this information, and in your Affiant's own work on this case.

3.      This case concerns a home invasion and homicide involving: Count 1: CIR - First Degree Felony Murder, in violation of 18 U.S.C. §§ 1153 and 1111; Count 2: CIR - Second Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111; Count 3: CIR - Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3); and Count 4: CIR - Robbery, in violation of 18 U.S.C. §§ 1153 and 2111.      Because this Affidavit is being submitted for the limited purpose of obtaining arrest warrants for Armondo Francisco WHITEROCK and Shawnavon CURLEY, your Affiant has not included every fact known to your Affiant concerning this investigation.   Your Affiant has set forth only the facts that your Affiant believes are necessary to establish probable cause for arrest warrants.

## Introduction

4.      On September 13, 2019, Navajo Nation CI Jefferson Joe notified FBI Special Agent Stanley Arrington of a homicide that occurred at M.W.'s residence in Sweetwater, Arizona, south of Red Mesa, Arizona, within the confines of the Navajo Indian Reservation in the District of Arizona.   CI Joe and SA Arrington responded to the incident and were briefed by the responding NPD Officers.

5.      Around 6:00 a.m., police officers responded to a call at M.W.'s residence, where M.W. was deceased.   M.W.'s family members, including his wife P.W., adult daughter S.W., teenaged son John Doe 1, and teenaged son John Doe 2,

2

were reported to have been assaulted with a baseball-type bat and possibly a machete or knife. Officers later learned Armondo WHITEROCK, Shawnavon CURLEY, Juvenile 1, and Juvenile 2, forcefully entered the M.W. family residence and subsequently beat M.W. to death and assaulted P.W., S.W., John Doe 1, and John Doe 2, with a baseball-type bat. Afterwards, the four aforementioned suspects stole a vehicle from the residence and subsequently wrecked the vehicle a short distance away.

6.      The FBI located S.W., John Doe 1, and John Doe 2, at the San Juan Regional Medical Center. John Doe 1 had a laceration injury to his right hand and S.W. had a puncture wound on her lower back.   P.W. transported herself to the Four Corners Regional Health Center for treatment of her injuries and was subsequently transported to the Northern Navajo Medical Center, via ambulance, for additional treatment.   M.W.'s deceased body remained in his residence. It was also learned that another young child, John Doe 3, was also in the residence at the time of the home invasion, and locked himself in his bedroom.

7.      Shawnavon CURLEY was taken into Navajo Nation custody after a short foot pursuit near M.W.'s residence after responding Navajo Criminal Investigators (CI) and FBI SA arrived on the scene. Shortly after the NPD arrest of Shawnavon CURLEY, NPD patrol officers located Juvenile 1 near the wrecked stolen vehicle and took him into custody. WHITEROCK and Juvenile 2 were not

3

located on the day of the offenses.

## Investigation

8. On September 13, 2019, the FBI and NDCI executed a consent search at M.W.'s residence. The search team observed a bloodlike substance throughout the inside of the residence as well as near the residence's front door. The search team collected multiple swabs of the bloodlike substance, clothing covered in a bloodlike substance, and wooden sticks from outside of the residence with bloodlike substances on them.

9. On September 13, 2019, during the NPD arrest of Shawnavon CURLEY, he was seen running with an aluminum bat, which he dropped before being arrested. The aluminum bat was observed to have a bloodlike substance on it.

10. On September 13, 2019, the NPD arrested Juvenile 1 near the wrecked vehicle that was stolen. Juvenile 1 was observed to have a cut on his hand and his clothing was covered in a bloodlike substance. Juvenile 1 made a spontaneous voluntary statement saying that "they" turned on him and tried to kill him. Juvenile 1 was not asked any follow-up questions and was treated by EMS for his hand injury.

11. On September 13, 2019, a Deputy Field Investigator with the Office of the Medical Investigator assisted during the recovery of M.W.'s body and indicated the preliminary autopsy of M.W. showed the manner of death was pending, but he had blunt force head trauma, contusions to his nose and lips, a subarachnoid

4

hemorrhage, and atherosclerosis artery disease.

*Interview of P.W.*

12.      On September 13, 2019, FBI SA Scott Sandusky and FBI SA Curtis Cox interviewed P.W. who stated that on the morning of September 13, 2019, she was in her residence with her husband, M.W., juvenile sons John Doe 1 and John Doe 2, and her juvenile grandson, John Doe 3. At around 4:15 a.m. or 4:30 a.m. P.W. heard people come through the front door, whom she later identified as Armondo WHITEROCK, Shawnavon CURLEY, Juvenile 1, and Juvenile 2.   P.W. saw four people enter her residence, but of the following three people that initially entered her residence, two had metal and silver colored bats and one had a machete: CURLEY, WHITEROCK, and Juvenile 1.

13.      When P.W. first saw CURLEY, WHITEROCK, and Juvenile 1, they were already in her house and went straight to John Doe 1 and John Doe 2's bedroom. When P.W. went into John Doe 1 and John Doe 2's bedroom, she was hit twice on the left side of her head. P.W. started bleeding and was thrown on the bed. P.W. witnessed Juvenile 1 assaulting John Doe 1 and John Doe 2. P.W. witnessed CURLEY, WHITEROCK, and Juvenile 1 hit M.W. and S.W. P.W. witnessed Juvenile 1 stabbing John Doe 1 with a knife while John Doe 1 was in the closet. P.W. described the knife as about 12 inches in length, with a silver blade. Juvenile 1 was also observed with a bat and knife. WHITEROCK, CURLEY, and Juvenile 1

took a pellet gun and .22, brown, old-fashioned gun, that were in the M.W. residence.

14.     After "they" asked for keys, WHITEROCK went to the backroom and tried to start a fire. CURLEY told WHITEROCK to stop and put out the fire. P.W. could smell the smoke from the fire and WHITEROCK was heard saying that he was going to burn the whole house down.  Later, P.W. told the assailants that the keys were on the floor and "go ahead." P.W. opined the assailants were in her house for about an hour and a half and the assailants were searching for valuables to steal and sell and kept asking for money.  P.W. said that she and her family could not leave the house and CURLEY told them to stay down or they would be killed. While being held captive, the assailants destroyed the house and things inside the house. WHITEROCK, CURLEY, Juvenile 1, and Juvenile 2 left the residence in M.W.'s vehicle.

15.     P.W. had no doubt about who was in her residence during the above-described attack because she knew all four boys. P.W. opined the attack was in retaliation for an incident that occurred in 2002 in which WHITEROCK's grandfather was killed.

*Interview of Shawnovan CURLEY*

16.     On September 13, 2019, FBI SA Scott Sandusky and FBI SA Curtis Cox Mirandized and interviewed Shawnavon CURLEY. FBI Agents asked CURLEY why he was limping and stated that as he was walking near a windmill,

6

he waved down a passing vehicle and noticed the driver had a badge. CURLEY ran away down a cow trail and stepped on a bush, injuring his knee. CURLEY tried to keep running, but could not, so he gave up and was arrested by the NPD. CURLEY opined he was arrested because the "neighbors called the cops" on him, Armondo WHITEROCK, and Juvenile 1.

17.     On September 12, 2019, CURLEY and Juvenile 1 went to meet up with WHITEROCK at his home. While CURLEY and Juvenile 1 were with WHITEROCK, he explained to them that some people came by his house and threatened him. These people had done this "for a while" and they "kinda got fed up with it." The people who threatened WHITEROCK were from the house CURLEY, WHITEROCK, and Juvenile 1 went to the following morning and on the same date he was arrested by the NPD.

18.     They found some "40's" and started drinking, got "kinda hyped," and decided to go to Q.'s house.  When P.W. was interviewed, P.W. reported Q. lived with her, her husband and sons on and off.  When CURLEY, WHITEROCK, and Juvenile 1 arrived at Q.'s house, they realized he was not at home and that was when "all that happened" and Q.'s family called the cops on them. CURLEY, WHITEROCK, and Juvenile 1 went into Q.'s house and "told them not to mess with us." When they arrived at the house, CURLEY was behind WHITEROCK and Juvenile 1 when either WHITEROCK or Juvenile 1 rushed into the door. Once the

7

front door was opened, they all went through the door into the house and spread out. CURLEY initially stated he stood near the front door keeping a look-out.

19.     Once inside the house, they asked for Q. and told the occupants of the house not to mess them. Some of the occupants "got mad" and tried to defend themselves. CURLEY went to help WHITEROCK and Juvenile 1 when he encountered a lady who was holding something. The lady started hitting CURLEY with the item, so he ran outside. CURLEY returned to the inside of the home where "we kinda just started fighting right there." CURLEY, WHITEROCK, and Juvenile 1 were all in the house and were punching people.

20.     While inside the house, CURLEY was looking for Q. and walked into a back bedroom, assuming it was Q.'s. Inside the bedroom, CURLEY encountered a man and a woman. They "took off" at CURLEY and he started fighting them. In the bedroom, CURLEY managed to knock the man down and a woman came at him while holding something and hitting him with it. CURLEY "managed to put her on the floor" by pushing her. Both the man and woman just laid there, so CURLEY left the room. CURLEY saw WHITEROCK and Juvenile 1 yelling at the other occupants of the house and CURLEY told them they need to leave because the people they were looking for were not there.

21.     CURLEY, WHITEROCK, and Juvenile 1 left the house, but CURLEY said he blacked out and could not remember how they left. CURLEY eventually

8

stated that he might have left in a vehicle. CURLEY stated they walked to Q.'s house, but he did not know where the vehicle came from, later acknowledging that the vehicle could have been sitting in front of the house when they took it. CURLEY said he was sitting in the back of the vehicle when it crashed, but could not recall who was driving.

22.    CURLEY recalled arriving at Q.'s house at approximately 3:00 a.m. or 4:00 a.m. and they left as the sun was rising. CURLEY acknowledged they were at the house for a while and they were "fighting for awhile." CURLEY said he was getting tired from fighting for so long. When asked what he used to fight, CURLEY said he found a bat and a knife that Q. had stolen from him. The knife was a fixed-blade and CURLEY put the knife in his pocket. He walked around with the bat.

23.    CURLEY said he did not plan to go inside Q.'s house, only planned to yell from the outside. When they got there, however, someone broke the door down, and CURLEY did not want someone to rush WHITEROCK or Juvenile 1. CURLEY did not know Q.'s family, only knowing that his family had a past with Q.'s family. CURLEY said he wanted to get his stuff back that Q. stole from him and subsequently stole a pellet gun, a bat, and a knife from the house. CURLEY did not know where the stolen pellet gun was.

24.    CURLEY said WHITEROCK had a machete when they entered the house. CURLEY initially fought the family members with his fists before finding a

9

bat inside the residence. CURLEY first hit a lady that was coming towards him and then saw the man waking up, so CURLEY hit him. CURLEY and the man and woman then started fighting. They ended up on the floor, where they continued fighting. The lady got ahold of something and hit CURLEY with it in the hands, head, and shoulders. CURLEY then ran out of the house, before returning to the same bedroom. He caught the woman off guard and pushed her. He then started hitting the man with his hands, and the man went down.

*Interview of Armondo WHITEROCK*

25.     On September 19, 2019, your Affiant, along with CI Jefferson Joe, interviewed Armondo WHITEROCK in which he stated that while he listening to music with Juvenile 2, Shawnavon CURLEY and Juvenile 1 approached them. This was the first time WHITEROCK met Juvenile 1. WHITEROCK, CURLEY, Juvenile 1, and Juvenile 2 walked to a nearby bootlegger's house where they eventually stole approximately eight 40 ounce bottles of beer and returned to WHITEROCK's house. While drinking beer at WHITEROCK's house, they began talking about how Q. had threatened him and stole some his belongings. WHITEROCK, CURLEY, Juvenile 1, and Juvenile 2 decided they were going to steal their belongings back from Q., so they left WHITEROCK's house and walked towards Q.'s house, which was a short distance away. WHITEROCK said he, CURLEY, Juvenile 1, and Juvenile 2 were all carrying bats as they walked to Q.'s

10

house and they intended to beat up Q.

26.     Once at Q.'s house, Juvenile 1 kicked open the door and entered the house. CURLEY and WHITEROCK followed in behind Juvenile 1. WHITEROCK went to Q.'s bedroom and began looking for his stolen belongings. WHITEROCK heard the sounds of someone being beaten in the room next to him.

27.     WHITEROCK moved across the hall to another bedroom and was looking for items that were stolen from him. While in this bedroom, S.W. tried to attack WHITEROCK with a bat. WHITEROCK and S.W. fought over the bat with WHITEROCK eventually gaining control of the bat and subsequently striking S.W. approximately three times with the bat. M.W. entered the bedroom after S.W. was attacked with the bat. WHITEROCK observed CURLEY attack M.W. with a bat, striking him the upper portion of his back more than once.

28.     WHITEROCK saw Juvenile 1 holding a knife with blood on it, but did not witness Juvenile 1 stab or cut anyone. WHITEROCK recalled seeing John Doe 2 bleeding. WHITEROCK also heard Juvenile 1 hitting John Doe 1 and John Doe 2 with a bat while John Doe 1 and John Doe 2 were in their bedroom.

29.     WHITEROCK said he lit a handkerchief on fire that was stuck to the ceiling in Q.'s room. WHITEROCK, CURLEY, Juvenile 1, and Juvenile 2 eventually left the residence in a vehicle and it was wrecked a short distance away.

30.     The events described above occurred within the boundaries of Navajo

11

Indian Reservation within the District of Arizona. During the initial investigation, your Affiant obtained Certificate of Indian Blood Certificates (CIB) for Armondo WHITEROCK, Shawnavon CURLEY, Juvenile 1, and Juvenile 2. The CIBs each included a Navajo Nation enrollment number indicating they are enrolled members of the Navajo Nation. Based upon the aforementioned information, your affiant believes that Armondo Francisco WHITEROCK and Shawnavon CURLEY have committed the following violations of federal law: Count 1: CIR - First Degree Felony Murder, in violation of 18 U.S.C. §§ 1153 and 1111; Count 2: CIR - Second Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111; Count 3: CIR - Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3); and Count 4: CIR - Robbery, in violation of 18 U.S.C. §§ 1153 and 2111.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

9/23/2019
_____
Executed on (Date)

_____
Scott Sandusky
Special Agent, FBI

__X___Sworn by Telephone

Date/Time: 9/23/2019 at 1:15 pm

_Camille D Bibles_
_____
HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge

12