GARY M. RESTAINO
United States Attorney
District of Arizona
JILLIAN BESANCON
Assistant U.S. Attorney
California State Bar No. 285869
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: Jillian.Besancon@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-19-08249-PCT-DJH-001 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDA AND MOTION FOR DOWNWARD VARIANCE AND/OR DEPARTURE PURSUANT TO 18 U.S.C. § 3553(a) AND THE SENTENCING GUIDELINES** |
| Shawnavon Curley, | |
| Defendant. | |

The W. family was asleep in their beds on the early morning of September 13, 2019 when Defendant Shawnavon Curley and others perpetrated a violent and senseless home invasion. The assailants attacked the family members with weapons, murdering grandfather M.W., seriously injuring the other adults and children, destroying property, and stealing items including a vehicle and a rifle.

The United States respectfully requests that the Court accept the plea agreement and adopt the calculations in the Presentence Investigation Report. (Doc. 147 ("PSR").) For his role in the robbery of the W. family and murder of M.W., Curley should be sentenced to a term of imprisonment of no more than 360 months. If the Court finds the downward departure or variance Curley requests to be appropriate, (Doc. 146), the United States asks the Court to limit any reduction to two levels and impose a sentence of no less than 292 months.

## I.    Factual and Procedural Background

Curley was charged with sixteen counts related to the home invasion perpetrated against the W. family, including first-degree felony murder, second-degree murder, kidnapping, kidnapping of child, assault with a dangerous weapon, assault with a dangerous weapon on child, assault resulting in serious bodily injury, robbery of adult and child, and burglary.  (CR 17.)  Curley pled guilty to second-degree murder and robbery of adult and child pursuant to a plea agreement providing his sentence shall not exceed 30 years.  (CR 134.)

The Presentence Investigation Report accurately states the facts of these offenses and summarizes their impact on the surviving W. family members.  (PSR ¶¶ 3-43.)  In Curley's own recitation of the events, he and three others went to the W. home because of a family feud and a dispute with Q., who lived at the house.  (PSR ¶¶ 10, 12.)  Co-defendant Whiterock also told law enforcement the group went to the W. house to recover items Q. had stolen from them, and there is evidence that the offense was also related to retaliation over a romantic interest.  (PSR ¶¶ 21, 29, 34.)  Curley admitted he was carrying a bat when the group arrived at the W. house.  Curley, Whiterock, and a juvenile assailant ("Juvenile 1") broke through the front door of the W. home and discovered Q. was not in the house.  (PSR ¶ 11.)  According to Curley, after discovering Q. was not there, "it just all clicked in all of our heads that we're just going to rob them."  (Discovery CURLEY_000234.)

The assailants brutally and indiscriminately attacked members of the W. family with bats and a knife.  Sixty-four-year-old M.W. was killed.  (PSR ¶ 4.)  His wife P.W. (age sixty-one), daughter S.W (age forty-three), and sons John Doe 1 (age sixteen) and John Doe 2 (age fifteen) were all assaulted and suffered varying levels of injury.  (PSR ¶ 6.)  A five-year-old grandchild was also in the house during the attack and was not physically injured.  (PSR ¶ 12; Doc. 147-1 at 2.) The assailants also destroyed property, searched for valuables to steal, and asked for money and car keys.  (PSR ¶ 23.)  P.W. estimated that the assailants broke into her home around 4:30 in the morning and the attack lasted about an hour and a half.  (PSR ¶ 23.)

Although Curley committed these crimes with other people, he himself played an active and substantial role in the crimes. P.W. reported the family could not leave the house during the attack because Curley told them to stay down or they would be killed. (PSR ¶ 23.) S.W.—who had been asleep in her residence next door—came into the house to help her family. (PSR ¶ 25.) S.W. reported that Curley broke her arm and hit her on the back of her head with a bat, and also hit M.W. in the head with a bat.[1] (PSR ¶¶ 25-27.) John Doe 1 heard Curley and others attacking M.W. and S.W. and recalled that Curley walked around the house looking for items to steal. (PSR ¶ 19.) Curley admitted to law enforcement that he hit M.W. and S.W. with a bat. (PSR ¶ 13.) He also "jab[bed]" P.W., John Doe 1, and John Doe 2 with a bat and told them to stay down. (Discovery CURLEY_000236.) He admitted stealing the W. family's car. (PSR ¶ 14.) Before leaving the house, Curley told the victims that if Q.'s family continued to mess with them, he and the other assailants would retaliate. (Discovery CURLEY_000234.)

The assailants left the W. family members' lives and home in shambles. M.W. died at the scene from blunt head trauma and had other injuries as described in the PSR. (PSR ¶ 24.) S.W. sustained life-threatening injuries including liver and diaphragm damage, stab wounds, and permanent arm injury. She had surgery to remove her spleen. (PSR ¶ 28.) John Doe 2 has permanent vision loss and was hospitalized overnight with a concussion and forehead laceration. (PSR ¶ 147-1 at 4.) P.W. suffered injuries including a concussion, lacerations, and arm contusions. (Discovery CURLEY_000609-643.) John Doe 1 had severe pain, a head injury, and cuts to his hand. (Discovery CURLEY_000489-541.) Their house sustained considerable damage and their vehicle was crashed and then further damaged by the assailants. (PSR ¶¶ 7, 38.)

---

[1] Curley denied hitting M.W. or S.W. in the head, but admitted to hitting M.W. in the legs and back and S.W. in the stomach and legs. (PSR ¶ 13.) Juvenile 1 hit M.W. in the head with a bat. (PSR ¶ 17.)

P.W., S.W., and John Doe 2 have submitted victim impact statements for the Court's consideration.  (Doc. 147-1.)  The victims also plan to attend the sentencing hearing and address the Court directly.  It is impossible to overstate the lifelong impact these offenses have had and will continue to have on the W. family.

The Presentence Investigation Report writer accurately calculates an advisory Sentencing Guidelines range of 360 months to life and recommends a sentence of 360 months on each court, to be served concurrently. [2]  (PSR at 21.)  Curley asks the Court to impose a sentence of no more than 240 months based on a downward departure or variance. (Doc. 146.)

**II.     United States' Sentencing Recommendation**

The Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors warrant a substantial penalty in this case.  These crimes are among the most serious in federal law and the nature and circumstances of the offenses are egregious.  Curley's crimes had multiple victims—including children—and were unprovoked.  Curley and the other assailants murdered M.W. and destroyed the other victims' lives to settle personal scores and for the chance to steal personal property as trivial as a speaker and headphones. (PSR ¶ 19.)

In addition to the offense conduct, § 3553(a) requires the Court to consider the defendant's history and characteristics.  The United States acknowledges that Curley's young age, lack of criminal history, and difficult upbringing are mitigating factors in this case and are proper for the Court's consideration.  Curley was eighteen years old at the time of the offenses and had no prior criminal history.  He is likely to receive a sentence longer than he has been alive.  Curley identifies other factors including his intoxication and notable acceptance of responsibility that the Court may also properly consider in its § 3553(a) analysis.  (*See* Doc. 146 at 2.)

---

[2] Curley has a pending objection to the PSR.  If his objection is sustained, the advisory Guidelines range would be 292-365 months.

Section 3553(a) also directs the Court to consider the need to avoid sentencing disparities among similarly-situated offenders.  Curley is the first defendant to be sentenced in this case.  Co-defendant Whiterock, who is similarly culpable, has entered into a plea agreement with the same sentencing stipulations and faces the same Guidelines range.[3]  The sentencing ranges for these defendants are driven by the robbery Guideline, which contains a cross-reference to the first-degree murder Guideline.  (PSR ¶ 48.)  This application of the cross-reference results in a higher sentencing range than that of other offenders convicted only of second-degree murder: for a defendant with no criminal history who receives a three-level reduction for acceptance of responsibility, the Guidelines range for second-degree murder is 168-210 months.  *See* U.S.S.G. § 2A1.2.  Here, the higher sentencing range is justified and it would not create an unwarranted sentencing disparity for Curley to receive a significantly higher sentence than others convicted only of second-degree murder.  This case stands apart from other second-degree murder cases because Curley also pleaded guilty to robbery of adult and child; faced a felony murder charge with a mandatory life sentence; and committed other serious offenses against multiple victims.

Several of the § 3553(a) factors support the 360-month sentence suggested by the Sentencing Guidelines and recommended by the probation officer.  In particular, the nature and circumstances of the offense show that a lengthy sentence is warranted to provide just punishment, promote respect for the law, afford adequate deterrence, and protect the public.  However, if the Court determines a lower sentence is appropriate given Curley's age and the other information he offers in mitigation, the United States respectfully asks the Court to limit any reduction to two levels and impose a sentence of no less than 292

---

[3] The other participants in this offense were juveniles.  Juvenile 1 was perhaps the most culpable of the assailants.  But if sentenced for these offenses, he would be subject to the provisions of the Federal Juvenile Delinquency Act (absent a transfer to adult status) and would be subject to the lesser of five years of imprisonment or the maximum adult guideline. 18 U.S.C. § 5037.

months.  No lesser sentence would be sufficient to recognize the harm suffered by the victims and provide an adequate sanction.

The Court should impose five years of supervised release as an additional measure of deterrence and impose the conditions recommended by the Probation Officer.  In particular, this offense shows that alcohol and substance abuse treatment are necessary to decrease Curley's risk of recidivism.  The maximum term of supervised release will provide an additional measure of deterrence and protection to the public, and will assist Curley with reintegrating into society.

**III.    Restitution**

The United States asks the Court to order restitution in the amount of $86,514.06 as recommended by the probation officer and documented in the PSR.  (PSR ¶ 106.)  In addition, the United States asks the Court to leave open the possibility of additional restitution for ninety days post-sentencing.  *See* 18 U.S.C. § 3664(d)(5).  It is expected the victims may have additional restitution claims not yet ascertained, including but not limited to travel expenses to attend the court proceedings in this case.

**IV.    Conclusion**

For these reasons, the United States asks the Court to accept the plea agreement and impose a sentence consistent with the Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors.

Respectfully submitted this 23rd day of March, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona


*/s Jillian Besancon*
JILLIAN BESANCON
Assistant U.S. Attorney

1

2

3

4

5
**CERTIFICATE OF SERVICE**

6

7
      I hereby certify that on the 23rd day of March, 2022, I electronically transmitted the

8
attached document to the Clerk's Office using the CM/ECF System for filing a copy to the

9
following CM/ECF registrant:

10
Daniel D. Maynard

11
 *s/Jillian Besancon*
U.S. Attorney's Office

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28